UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ROBERT EARL WALLACE,<br><br>    Defendant,<br><br>JULIET BRAVO LLC and JEFFREY MARCONET,<br><br>    Petitioners. | CRIMINAL ACTION NO. 5:17-118-KKC<br><br><br>**OPINION AND ORDER** |

*** *** ***

This matter is before the Court on Petitioners Juliet Bravo LLC and Jeffrey Marconet's joint motion for summary judgment regarding their petition for a hearing to adjudicate the validity of their alleged legal interest in a forfeited airplane. (DE 752.) For the following reasons, the Court denies the motion for summary judgment.

I.  **Background**

A.  **Related Criminal Case**

On February 21, 2020, Defendant Robert Earl Wallace pleaded guilty to Count I of the Superseding Indictment for conspiracy to distribute cocaine under 21 U.S.C. § 846. (DE 462; DE 463.) According to the Superseding Indictment, the conspiracy existed from approximately March 2014 to April 2017. (DE 78 at 1.) The Superseding Indictment also included forfeiture allegations claiming that Defendant used a Hawker 700A airplane, Registration #N18CC, in committing the conspiracy and that the airplane constituted proceeds obtained from the conspiracy. (*Id.* at 4.) The Government asserted that the airplane

1

was accordingly forfeited to the United States pursuant to 21 U.S.C. § 853 and 18 U.S.C. § 982. (*Id.*) In pleading guilty, Defendant admitted to piloting flights for his co-conspirators between July 5, 2016, and March 15, 2017, to move drugs and drug proceeds. (DE 462 ¶ 3.) As part of the plea agreement, Defendant agreed that the United States could prove the required nexus for the forfeiture of the airplane and agreed to forfeit the airplane. (*Id.* ¶ 9.) On September 15, 2020, the Court entered a preliminary judgment of forfeiture and ordered the airplane forfeited to the United States pursuant to 21 U.S.C. § 853. (DE 654 at 1.)

**B.    Airplane Ownership**

On November 6, 2014, Petitioner Juliet Bravo LLC ("Juliet"), a Delaware Limited Liability Company ("LLC"), purchased the subject airplane for $496,775.48. (DE 752-6 at 1, 3.) Juliet was created to purchase the airplane and subsequently lease it to clients. (*Id.* at 3.) Defendant, Petitioner Jeffrey Marconet, and James Irish act as Juliet's three members, and each owns one-third of Juliet. (*Id.* at 2.) Robert Etchell is Juliet's manager. (*Id.* at 53, 55.)

Defendant, Marconet, and Irish all contributed money to Juliet to fund the purchase of the airplane, but Marconet primarily arranged the financing. (*Id.* at 3.) Marconet personally borrowed $375,000 from a family trust to finance the purchase, and in turn, Juliet borrowed $410,000 from Marconet to purchase the airplane. (DE 752-6 at 3-4, 52-55.) Juliet and Marconet then executed a security agreement under which Marconet obtained a security interest in the airplane as collateral to secure payment from Juliet for the funding it borrowed from Marconet to finance the purchase. (*Id.* at 3, 52-53.)

On November 4, 2017, authorities seized the airplane in Florida in connection with Defendant's crime. (DE 752-3 at 7.)

### C.     Procedural History of Ancillary Proceeding

On October 9, 2020, Juliet and Marconet filed a petition to adjudicate the validity of their third-party legal interests in the airplane. (DE 674.) In the petition, Juliet asserts an interest as the airplane's registered owner. (*Id.* ¶ 2.) Marconet asserts an interest as a "lienholder" because he loaned money to Juliet to finance the purchase of the airplane, and the airplane acts as the collateral to that loan. (*Id.* ¶ 3.) Petitioners claim they are "innocent owners" under 18 U.S.C. § 983(d). (*Id.* ¶ 16.) They further allege that they had no notice that the airplane was used for "illicit purposes," were not "willfully negligent" in operating the airplane, and did not have "any intent to commit any criminal offense." (*Id.* ¶ 9 (quotation marks omitted).) Irish and Etchell have not claimed any interest in the airplane.

The Government filed a response opposing Petitioners' claims and requesting a 120-day period of discovery pursuant to Federal Rule of Criminal Procedure 32.2(c)(1)(B), which this Court granted. (DE 684; DE 685.) In its response, the Government indicated that it had reached an initial agreement with Petitioners. (DE 684.) The negotiations between the Government and Petitioners apparently broke down (DE 743 at 2-3; DE 744), and Petitioners have now moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 (DE 752).

In their summary judgment motion, Petitioners argue that they had a valid legal interest in the airplane under 21 U.S.C. § 853(n)(6)(A) that arose prior to Defendant's offense, and therefore, they are entitled summary judgment. (DE 752-1 at 8-9.) Petitioners also ask the Court for leave to file a motion for attorney's fees under the Equal Access to Justice Act ("EAJA") if they prevail. (DE 752-1 at 22-23.)

The Government opposes the motion for summary judgment. (DE 753.) It contends that to determine if Petitioners have an interest in the airplane superior to that of Defendant, the Court must consider if Petitioners "had knowledge of, or were willfully blind to, the use

3

of [the airplane] to facilitate trafficking of narcotics and proceeds of the sale of said narcotics." (DE 753 at 2.) The Government maintains that evidence suggests that Petitioners had notice of the illegal activity that occurred on the airplane, and therefore, the Court should deny Petitioners' summary judgment motion and order a hearing. (*Id.* at 1-4.) The Government also opposes Petitioners' request for leave to file a motion for attorney's fees under the EAJA. (*Id.* at 4-5.)

## II.  Discussion

### A.  Forfeiture Procedure

A person convicted of conspiracy to distribute cocaine "shall forfeit to the United States . . . any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation [and] any of the person's property used . . . to commit, or to facilitate the commission of, such violation[.]" 21 U.S.C. § 853(a). A third-party may assert a legal interest in property forfeited to the United States by petitioning for a hearing to adjudicate the validity of that alleged interest in the property. § 853(n)(2). Before the Court holds a hearing on the petition, the third-party and the Government may conduct discovery. *See* Fed. R. Crim. P. 32.2(c)(1)(B). After discovery closes, "a party may move for summary judgment under Federal Rule of Civil Procedure 56." *Id.* The summary judgment standard under the Federal Rules applies. *United States v. Coffman*, Criminal Action No. 5:09-CR-181-KKC, 2012 WL 5611510, at *1 (E.D. Ky. Nov. 15, 2012). Under Rule 56, the Court must grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact[,] and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The court must amend the forfeiture order to recognize a third party's legal interest if

> the petitioner has established by a preponderance of the evidence that the petitioner has a legal right, title, or interest in the property, and . . . the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section.

21 U.S.C. § 853(n)(6)(A). Put more simply, under § 853(n)(6)(A), the petitioner must prove that when the criminal acts were committed, "1) [it] was the one that had an interest in the property, not the defendant; or 2) [its] interest was superior to the defendant's interest." *United States v. Tovar*, CRIMINAL NO. 5:15-13-KKC, 2019 WL 3801841, at *1 (E.D. Ky. Aug. 13, 2019).

As a result of Defendant pleading guilty to conspiracy to distribute cocaine, the airplane was forfeited to the United States pursuant to § 853. (DE 654.) Petitioners asserted their legal interest in the airplane by filing their petition to adjudicate the validity of their alleged interest in the airplane. (DE 674.) Since the Court already allowed parties to conduct discovery, Petitioners' motion for summary judgment under Rule 56 is proper. However, as the Court will explain, there are genuine disputes as to several material facts bearing on whether Petitioners had an interest in the property instead of Defendant or whether their interest was superior to that of Defendant. Accordingly, the Court denies Petitioners' motion for summary judgment.

B.     **Whether Petitioners Have Standing**

In contesting a governmental forfeiture action, the petitioner must establish both Article III standing and statutory standing. *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 497 (6th Cir. 1998) (civil forfeiture); *United States v. Howard*, Case No. 1:12cr95-4, 2017 WL 2955758, at *2 (S.D. Ohio July 11, 2017) (criminal forfeiture); *United States v. Fabian*, No. 1:11-CR-157, 2013 WL 150361, at *3 (W.D. Mich. Jan. 14, 2013) (criminal forfeiture), *aff'd,* 764 F.3d 636 (6th Cir. 2014).

To have Article III standing, the petitioner "must make at least a prima facie showing of a 'vested' or a 'superior' interest." *United States v. Campos*, 859 F.2d 1233, 1239 (6th Cir. 1988). This means that the petitioner "must claim a facially colorable interest in the seized property." *United States v. Salti*, 579 F.3d 656, 667 (6th Cir. 2009) (citation and quotation marks omitted). Relatedly, when determining whether the petitioner has such a facially colorable property interest, "courts look to the law of the jurisdiction that created the property right." *United States v. Hall*, 877 F.3d 676, 681 (6th Cir. 2017) (citation and quotation marks omitted). The applicable state law will therefore govern "the nature and extent" of a petitioner's interest in the forfeited property. *United States v. Huntington Nat'l Bank*, 682 F.3d 429, 437 (6th Cir. 2012).

However, "[b]are legal title, in the absence of assertions of dominion, control or some other indicia of ownership of or interest in the seized property, is insufficient to confer standing to challenge a forfeiture." *$515,060.42*, 152 F.3d at 498 n.6. This is because "[c]ourts look behind the formal title to determine whether the record title owner is a 'strawman' set up to conceal the financial affairs of illegal dealings of someone else." *Tovar*, 2019 WL 3801841, at *2 (quoting *United States v. Carrell*, 252 F.3d 1193, 1204 (11th Cir. 2001)). "The rationale for the rule that bare legal title may be insufficient [for standing] is based on a candid determination that things are often not what they appear to be, especially in the world of drug trafficking." *Id.* (citation and quotation marks omitted). Accordingly, the court must also determine whether the petitioner "purchased the property with the proceeds of the criminal activity that gave rise to the forfeiture." *Id.*

To establish statutory standing, "any person, other than the defendant," must assert a "legal interest" in the forfeited property within 30 days of the forfeiture notice by petitioning the court for a hearing to adjudicate that interest. § 853(n)(2); *see also Howard*, 2017 WL

6

2955758, at *2. A company is not a person "other than defendant" where the identities of the company and defendant are indistinguishable. *See United States v. Parenteau*, 647 F. App'x 593, 595-96 (6th Cir. 2016). This may occur when the evidence fails to establish that the company exists as a separate legal entity from the defendant, the defendant exercises total control over the company, or the corporate veil between the company and defendant is otherwise pierced. *Id.*; *United States v. Silva*, CASE NO. 15-20727-CR-GAYLES/OTAZO-REYES, 2018 WL 5847348, at *1 (S.D. Fla. Nov. 8, 2018).

### 1. Juliet's Standing

Juliet asserts Article III standing in the airplane as the airplane's registered owner. (DE 752-4 at 736.) But which state's law applies to the instant case—and therefore, determines the nature and extent of Juliet's interest in the airplane—is unclear. Juliet, the airplane's registered owner, is a Delaware LLC (DE 752-6 at 1), and Marconet, the airplane's lienholder, is a citizen of California (*id.*). In cases arising under federal question jurisdiction like the one here, the Court applies federal choice-of-law principles. *United States v. One Silicon Valley Bank Acct., 3300355711, In the Amount of One Hundred Thirteen Thousand Nine Hundred Fifty-Two & 62/100 Dollars ($113,952.62)*, 549 F. Supp. 2d 940, 954 (W.D. Mich. 2008). "In the absence of any established body of federal choice-of-law rules, the Court's inquiry begins with the Restatement (Second) of Conflicts of Law." *Id.* Under the Restatement (Second) of Conflicts of Law, property interests "are determined . . . by the 'local law' of the state which . . . has the most significant relationship to the thing and the parties

under the principles stated in § 6."[1] Restatement (Second) of Conflict of Laws § 222 (Am. L. Inst. 1971).

Neither Juliet nor the Government engaged in any choice-of-law analysis. Juliet directly applied Delaware law, (*see, e.g.,* DE 752-1 at 16, 20), and the Government did not apply any state law, (*see* 753 at 2-4). The Court declines to define the contours of Juliet's or Defendant's property interest in the airplane without argument from parties regarding which state's law governs that interest for purposes of evaluating standing. Therefore, the Court will not determine whether Juliet has established Article III standing at the summary judgment stage.

Alternatively, because legal title is not enough to confer standing, Juliet must also demonstrate other indicia of ownership over the airplane. This is especially the case here, where Juliet was created by Defendant and others. In its motion, Juliet did not submit additional evidence of its ownership in the airplane beyond conclusory claims. Nor did the Government dispute this lack of evidence. Juliet failed to submit evidence to show that it was not set up to conceal Defendant's criminal activity, thereby protecting the airplane from

---

[1] § 6 of the Restatement (Second) states:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

 (a) the needs of the interstate and international systems,
 (b) the relevant policies of the forum,
 (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
 (d) the protection of justified expectations,
 (e) the basic policies underlying the particular field of law,
 (f) certainty, predictability and uniformity of result, and
 (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (Am. L. Inst. 1971).

seizure if the airplane was involved in criminal activity. The Government also did not dispute this lack of evidence.[2] At this stage, the evidence that Juliet has presented is insufficient to establish Article III standing, and thus, the Court will not grant summary judgment for Juliet.

As to statutory standing, Juliet must show that it is a person "other than" Defendant. While Juliet's identity appears distinguishable from Defendant's because it exists as a separate legal entity with two other members (DE 752-6 at 2), the parties did not address the scope of Defendant's control over Juliet or if the Court should pierce the corporate veil between Juliet and Defendant. Thus, at this point, the determination of whether Juliet has demonstrated statutory standing is not an appropriate inquiry for the Court to address on a summary judgment motion.

### 2. Marconet's Standing

Marconet asserts Article III standing in the airplane as a lienholder. Marconet and the Government likewise did not engage in any choice-of-law analysis as it pertains to Marconet's or Defendant's interest in the airplane. Again, the Court declines to determine whether Marconet has established Article III standing at the summary judgment stage without this analysis. Because the Court will not reach the issue of Marconet's Article III standing, it will not address whether Marconet has established statutory standing at this juncture.

---

[2] The majority of the Government's response to Petitioners' summary judgment motion focuses on the argument that Petitioners had knowledge of the illegal activity occurring on the airplane. (DE 753 at 2-4.) But under § 853(n)(6)(A), Petitioners' knowledge of Defendant's crime is largely irrelevant unless the evidence shows that Juliet was created as a tool to conceal Defendant's crime. *See Tovar*, 2019 WL 3801841, at *2. The Government has yet to articulate this connection.

## C.     When the Government's Interest Vested in the Airplane

For the purposes of § 853(n)(6)(A), the interest in the forfeited property "vests in the United States upon the commission of the act giving rise to forfeiture[.]" § 853(c). Under this so-called "relation-back clause," "[a]fter the commission of the criminal acts, title to the forfeitable property . . . actually belongs to the government." *Huntington*, 682 F.3d at 433 (citation and quotation marks omitted). Thus, "the government steps into the shoes of the defendant **acquiring only the rights of the defendant at the time of the criminal acts**, and nothing more." *Id.* (emphasis added) (citation and quotation marks omitted). If the forfeited property was purchased with criminally derived proceeds, the title vests in the United States at the time of purchase, as proceeds of the crime cannot precede the crime. *United States v. Warshak*, No. 09-3321, 2011 WL 2450991, at *2 (6th Cir. March 30, 2011) (per curiam). In conspiracy cases, the petitioner must at least demonstrate that the defendant's role in the conspiracy began after the petitioner's interest vested in the property, even if the conspiracy itself pre-dates the vesting of that interest. *See United States v. Brooks*, 112 F. Supp. 2d 1035, 1040 (D. Haw. 2000).[3]

Here, the relation-back clause presents a few disputes of material fact that are left unresolved in the parties' briefs. Accordingly, the Court cannot grant summary judgment for Petitioners.

---

[3] *See also United States v. Lucas*, 986 F.3d 224, 228-29 (3d Cir. 2021) (invalidating forfeiture order where the petitioner-LLC acquired the subject property five years before the defendant's crime, and the defendant later acquired the LLC); *United States v. Alquzah*, 91 F. Supp. 3d 818, 822, 831 (W.D.N.C. 2015) (finding that the petitioner had a vested interest in the forfeited joint bank account because it was opened after the charged conspiracy began but before the defendant became involved in that conspiracy). *But see United States v. Monea*, Case No. 5:07CR30, 2009 WL 10696862, at *2 (N.D. Ohio May 11, 2009) (concluding that the Government's interest vested in the forfeited property on the date that the conspiracy began, although the property itself was not used as part of the conspiracy until after that date).

For one, the Court has not yet determined the nature and extent of Defendant's interest in the airplane because of the lack of meaningful choice-of-law analysis in the parties' briefs. The magnitude of Defendant's interest determines what interest the Government acquired.

Next, Petitioners have not submitted sufficient evidence for the Court to find that the airplane was not purchased with criminally derived proceeds. If the airplane represented proceeds of the conspiracy, the Government's title vested in the airplane at the time of purchase, and Petitioners may not have a valid legal interest in the airplane. Although Marconet primarily arranged the financing for the purchase (DE 752-6 at 3), Defendant also contributed funding to the LLC, as Petitioners admit (DE 752-1 at 8). Moreover, the Superseding Indictment alleged that the airplane constituted proceeds obtained from the conspiracy (DE 78 at 4), and Defendant admitted in his plea agreement that the Government could prove the required nexus for forfeiture (DE 462 ¶ 9). However, the preliminary judgment of forfeiture itself did not specify whether the airplane constituted proceeds of the conspiracy. (*See* DE 654.) Because this factual issue remains, granting summary judgment for Petitioners is inappropriate.

Finally, whether the airplane represents proceeds of the conspiracy also depends on when Defendant joined the conspiracy, which the parties did not extensively discuss. Defendant pleaded guilty to Count I of the Superseding Indictment, which specified that the conspiracy to distribute cocaine existed from approximately March 2014 to April 2017. (DE 78 at 1.) But in his plea agreement, Defendant admitted to piloting flights for his co-conspirators between July 5, 2016, and March 15, 2017. (DE 462 ¶ 3.) Thus, yet another factual dispute exists.

11

Because there a number of genuine disputes of material fact related to when the Government's interest vested in the forfeited airplane, the Court also denies Petitioners' motion for summary judgment on this ground.

### D. Whether Petitioners' Are Entitled to Attorney's Fees under the EAJA

Because whether Petitioners are entitled to attorney's fees under the EAJA depends on whether they are successful in adjudicating their legal interest in the airplane, the Court declines to answer this question unless and until Petitioners prevail in their underlying petition.

### III. Conclusion

The Court hereby orders as follows:

1. Petitioners Juliet Bravo, LLC and Jeffrey Marconet's joint motion for summary judgment (DE 752) is DENIED;

2. This matter will be SET for an ancillary proceeding pursuant to Federal Rule of Criminal Procedure 32.2(c). During the ancillary proceeding, parties should be prepared to address the pending issues discussed in this opinion; and

3. This matter is SET for a telephonic scheduling conference to discuss potential dates for the ancillary proceeding on **October 12, 2021 at 11:30 a.m.** The parties shall call 888-684-8852, use access code 6823688, and dial in a few minutes before the conference is scheduled to begin.

Dated September 10, 2021

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY

12